﻿Citation Nr: AXXXXXXXX
Decision Date: 08/31/20 Archive Date: 08/31/20

DOCKET NO. 181105-1107
DATE: August 31, 2020

ORDER

Prior to January 14, 2017, a rating higher than 50 percent for right hand arthritic changes is denied; from that date, a 70 percent rating for right hand arthritic changes with special monthly compensation (SMC) for loss of use is granted.

A total disability rating based on individual unemployability (TDIU) is denied.

FINDINGS OF FACT

1. Prior to January 14, 2017, the Veteran’s right hand arthritic changes were manifested by unfavorable ankylosis of the 2nd through 5th digits.

2. From January 14, 2017, the Veteran’s right hand arthritic changes resulted in impairment equivalent to amputation with suitable prosthesis.

3. The Veteran’s service-connected disability does not preclude him from gainful employment.

CONCLUSIONS OF LAW

1. Prior to January 14, 2017, the criteria for a rating higher than 50 percent for right hand arthritic changes have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.321, 4.1, 4.2, 4.7, 4.71a, DC 5217.

2. From January 14, 2017, the criteria for a 70 percent rating for right hand arthritic changes have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.321, 4.1, 4.2, 4.7, 4.71a, DC 5126.

3. From January 14, 2017, the criteria for SMC based on loss of use of the right hand have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.321, 4.1, 4.2, 4.7, 4.63.

4. The criteria for a TDIU have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. § 4.16.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active service in the U.S. Army from November 1969 to June 1972. This matter initially came before the Board of Veterans’ Appeals (Board) on appeal from a July 2011 rating decision. It was previously remanded by the Board in August 2017 for additional development.

In May 2018, the Veteran opted into the modernized review system, also known as the Appeals Modernization Act (AMA), by submitting a Rapid Appeals Modernization Program (RAMP) election form and selecting the higher-level review (HLR) lane. The agency of original jurisdiction (AOJ) issued a RAMP HLR decision in August 2018, which is the decision on appeal. In response to that decision, the Veteran appealed to the Board through the hearing lane. He testified at a Board hearing in April 2020 and was afforded 90 days after that hearing to submit additional evidence.

Unfortunately, a transcript of that hearing could not be produced. The Veteran’s attorney was notified of this but declined the opportunity for the Veteran to testify at another hearing. However, he did submit evidence in support of the claim within the 90-day window and waived the remainder of that window.

Right hand arthritic changes prior to January 14, 2017

The Veteran is currently assigned a 50 percent rating for his right (dominant) hand arthritic changes under 38 C.F.R. § 4.71a, Diagnostic Code (DC) 5217. This code addresses unfavorable ankylosis of four digits on one hand. The current 50 percent rating is assigned when unfavorable ankylosis affects the index, long, ring, and little fingers of the dominant hand. A higher 60 percent rating is assigned when the thumb and any three fingers are affected. Under DC 5216, a 60 percent rating is also assigned for unfavorable ankylosis of all five digits.

Such ratings are not warranted prior to January 14, 2017. VA records dated January 2010 noted flexion contractures of the second through fifth digits, but not the thumb. A March 2011 VA examination also noted the presence of ankylosis in all the right hand digits except for the thumb. The remainder of the treatment records from this period show similar findings. Because the evidence does not establish unfavorable ankylosis of the thumb, higher ratings are not warranted.

Both DC 5216 and 5217 allow consideration for whether evaluation as an amputation is warranted. However, in contrast to the period discussed below, there is no evidence during this period demonstrating that the Veteran’s right hand disability resulted in a level of impairment equivalent to amputation, and therefore a rating consistent with amputation is not warranted.

Right hand arthritic changes from January 14, 2017

From January 14, 2017, a 70 percent rating is appropriate. As stated in a detailed November 2018 opinion, the Veteran underwent an evaluation on that date. The private examiner found the Veteran’s right hand was “club-like” when used for manipulation. He was able to push objects with his fist, but had great difficulty using individual fingers or the hand for gripping. The examiner also described the Veteran’s functional capabilities, noting that he was four times slower in placing tests compared to typical individuals his age. His speed was equivalent to those who used prosthetics. In that regard, his right hand was no better than a prosthetic replacement.

Under DC 5126, amputation of four digits on the dominant hand equates to a 70 percent rating, which is the maximum schedular rating available for the hand. Higher schedular ratings require amputation which extends into the forearm. See 38 C.F.R. § 4.71a, DC 5123.

SMC based on loss of use of the right hand

Loss of use of a hand, for the purpose of SMC, will be held to exist when no effective function remains other than that which would be equally well served by an amputation stump at the site of election below the elbow with use of a suitable prosthetic appliance. 38 C.F.R. § 4.63. As discussed above, the Veteran met these criteria based on the findings of the January 14, 2017 private examination, and therefore SMC is warranted from that date.

TDIU

A TDIU may be assigned where the schedular rating is less than total, when it is found that the disabled person is unable to secure or follow a substantially gainful occupation because of a single service-connected disability ratable at 60 percent or more, or because of two or more disabilities, provided at least one disability is ratable at 40 percent or more, and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. 38 C.F.R. §§ 3.340, 3.341, 4.16(a).

The Veteran’s right hand arthritic changes are his only service-connected disability. As discussed above, he is assigned a 50 percent rating prior to January 14, 2017, and a 70 percent rating after. Therefore, he meets the schedular criteria only as of January 14, 2017. Nevertheless, for the period prior to that date, a TDIU may still be available on an extraschedular basis if the Veteran is unable to secure and follow a substantially gainful occupation by reason of his service-connected disability. 38 C.F.R. § 4.16(b).

The central inquiry is determining whether a TDIU is warranted is “whether the veteran’s service-connected disabilities alone are of sufficient severity to produce unemployability.” Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Consideration may be given to a veteran’s level of education, special training, and previous work experience, but advancing age and the impairment caused by nonservice-connected disabilities are not for consideration in determining whether such a total disability rating is warranted. See 38 C.F.R. §§ 4.16, 4.19.

The Board concludes that a TDIU is not warranted. First, it acknowledges the significant functional impairment associated with the Veteran’s right hand disability. As noted in private records from January 2017, the Veteran is not able to grasp or hold things in a normal manner, and he requires a handle or both arms to lift an object. He reported he could not lift more than 8 pounds (such as a gallon of milk), and even then, he required a handle or easy handhold. Similar difficulties were noted during a March 2018 VA examination, though the Veteran was able to fold a piece of paper and write legibly per the examiner.

However, such limitations would not preclude gainful employment given the Veteran’s educational and occupational background. He reported significant experience with physically-oriented employment, including operating a forklift, working in a warehouse, and installing tiles and floors, and the Board recognizes that his service-connected disabilities likely precludes that type of work. 

Nevertheless, private treatment records from January 2017 show the Veteran had an associate’s degree, and his September 2010 TDIU application notes three years of college level education. The same private treatment records show that he worked in insurance sales from 1982 to 1986, and last worked as a forklift operator in 2001. However, his 2010 TDIU application showed he last worked full-time as district manager for an insurance company 15 years earlier (approximately 1995). This discrepancy makes it difficult to determine the complete history of the Veteran’s occupational experience. 

In any case, the Board finds that the functional impairments associated with the Veteran’s right hand disability would not preclude his previous work in insurance sales. Unlike his construction or warehouse jobs, insurance work does not require the same physical involvement, and his duties would likely be within the scope of his functional capability, including writing legibly and being able to perform actions like folding paper.

The ratings assigned to his right hand disability represent the average impairment in earning capacity in civil occupations resulting from that condition and are considered adequate to compensate for considerable loss of working time. 38 C.F.R. § 4.1. Ultimately, the record does not otherwise reflect some factor that takes his case “outside the norm” of any other veteran rated at the same level. Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993).

 

 

JOHN Z. JONES

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Shamil Patel, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.